**PITTSBURG COCA–COLA BOTTLING WORKS OF PITTSBURG,**
Texas, Appellant,

v.

**Mrs. Cuma PONDER, Appellee.**

No. 7865.

Court of Civil Appeals of Texas.

Texarkana.

June 11, 1968.

Rehearing Denied July 2, 1968.

Jack Pew, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellant.

Jim Ammerman, Jones, Jones & Baldwin, Marshall, Boyet Stevens, Daingerfield, for appellee.

DAVIS, Justice.

Plaintiff, Mrs. Cuma Ponder, a widow, sued defendant, Pittsburg Coca-Cola Bottling Works of Pittsburg, Texas, for injuries plaintiff received when a bottle of Coca-Cola, or coke, exploded and drove some glass into her left ankle and left foot. Plaintiff alleged that defendant was engaged in the process of manufacturing, bottling and selling cokes for human consumption and had impliedly warranted that the cokes and the bottle in which they were contained were safe and suitable for the use for which they were manufactured and sold, and would not cause any harm to those who handled or used the cokes, but defendant had breached this implied warranty.

Plaintiff owns and operates a cafe in Omaha, Texas, and was in the process of putting three king size cokes in the cooler box. She had brought 3 king size cokes from the store room and was about to put them into the cooler box when one of them "exploded". She was behind a counter when the bottle exploded, and a piece of the glass about the size of a quarter, from the coke bottle, was forced over the counter and lodged in a customer's boot, a distance of about 15 or 20 feet away. Some of the glass cut a hole about a quarter of an inch long in her left ankle. Some of it pierced her left knee and left foot. She alleged that the coke, and the bottle that exploded, were under the exclusive control of defendant until it was delivered to plaintiff; and, after delivery, it was in no way interfered with, changed or altered in a manner to cause or bring about the explosion. She invoked the rule of "res ipsa loquitur"; that the explosion of the bottle was of such unusual occurrence under the existing circumstances that it would not happen in the normal course of events without negligence on the part of defendant; and, the doctrine of "strict liability".

The case was tried before a jury. Four special issues were submitted. All were answered in favor of plaintiff. Judgment was entered in her favor. Defendant has

perfected its appeal and brings forward twenty-five (25) points of error.

Points 1, 2 and 15 are multifarious and should not be considered. Since defendant has a right to amend its brief (Rule 431 Texas Rules of Civil Procedure), the points will be considered because they raise the points of "no evidence" on the doctrine of "strict liability" and "res ipsa loquitur"; the errors of the trial court in rendering judgment for plaintiff on res ipsa loquitor and strict liability; and, no evidence on strict liability and "implied warranty". Defendant brings forward points of error of no evidence; insufficient evidence; that the judgment is against the great weight and preponderance of the evidence as to be manifestly wrong and unjust as to each of the special issues submitted; and in overruling its objections to the special issues, definitions and instructions. All of the points are challenged by plaintiff.

Plaintiff entered the cafe business in 1960, in Omaha, Texas. She received deliveries of coca cola products from defendant on Tuesdays and Thursdays each week through September 23, 1965. Venoy Daniels was the route salesman and he would deliver the cokes, "regular" and "king size" into the storeroom of the cafe and stack them in a different place than other soft drinks were stacked. This was according to instructions. He would try to keep 3 or 4 cases in stock. According to plaintiff, nobody ever touched the cokes in her cafe except the defendant's delivery boy and the plaintiff from the time of their delivery until she put them in the cooler box. Plaintiff usually went to work at 6:00 a. m. and worked until 2:00 to 4:00 p. m. She would always put the cokes, and other soft drinks in the cooler box before she left. None of her employees, or any other person, had any right to move the soft drinks after they were delivered. The waitresses and the cook would carry empty bottles into the storeroom but they would not strike, jumble or intermingle any of the soft drinks in any manner. The storeroom was about 4 x 6

feet. A customer could have gone into the store room while plaintiff was off duty. There was nothing in the store room but soft drinks. There were no rest rooms, wash basins or anything in there that would entice a customer to go into the store room. Plaintiff would go into the store room and occasionally move some of the cases of soft drinks; and, would, at times, stack one case of drinks on top of other drinks. But, she would do so for the purpose of getting a case of "regular" cokes, or "king size" cokes out of the stack. She would do this in the regular manner, and in such a way that it would not injure the bottles or do anything that would cause the bottles to explode or erupt.

Plaintiff swore very positively to the foregoing facts. Defendant put a witness on the stand who testified as an "expert". He testified that in his 20 years experience he had not seen a bottle of coke explode, or erupt, unless the bottle was damaged, in some way, from internal pressure. He further admitted there were such things as "human error", and "mechanical or machine error". The evidence showed that the bottles, which were reused, were checked, rechecked and rechecked for any injuries, or thermal cracks, by the naked eye of employees, every time they were refilled. Three different inspections.

■ The evidence shows that the cokes were delivered to plaintiff on September 23, 1965. She received her injury on September 27, 1965; four (4) days later. The cokes were unloaded from defendant's truck and put into plaintiff's store room, which was air conditioned. There was no extreme temperature change. We will take judicial knowledge of the fact that gas, when sealed inside a bottle, under certain conditions will continue to expand. When the internal pressure gets too high, something must give way. In this case, it was the glass bottle.

Plaintiff had to see a medical doctor, and was placed in a hospital for 13 days. The doctor did some probing when he first saw

her. After she was placed in the hospital, he did surgery and continued to probe for the glass that penetrated her left ankle, but was unable to find it. He continued to see her on many occasions. She swore that the injury caused her to suffer an awful lot of pain; and, she still suffers. Nearly a year after the injury, she wore some high-heeled shoes to Sunday School and Church. She noticed that it was causing her left ankle to hurt severely. The next day she had such a severe pain that she fell down while she was trying to walk.

In Texas, the rule of res ipsa loquitur has been applied to the exploding of coke bottles when the explosion occurred after the coke bottle left the physical control of the manufacturer provided the testimony shows by a preponderance of the evidence that the bottle of coke was (1) in no way accessible to extraneous harmful forces, and (2) was carefully handled by the plaintiff, or any third party who may have touched, or moved it. Honea v. Coca Cola Bottling Co. (1944), 143 Tex. 272, 183 S.W.2d 968; Hankins v. Coca Cola Bottling Co. (1952), 151 Tex. 303, 249 S.W. 2d 1008; Amarillo Coca Cola Bottling Co. v. Hall, (Tex.Civ.App.1964), 384 S.W.2d 726, N.W.H.; Amarillo Coca Cola Bottling Co. v. Price, (Tex.Civ.App.1964), 378 S.W. 2d 409, N.W.H. There was some evidence in this case, and the evidence is sufficient to support the jury findings. Courts of other states have so held. See Products Liability, Vol. 3, cases cited by products; Exploding Bottles—Carbonated Soft Drink Bottles. Products Liability, Vol. 2, Sec. 26.02(1) (c) P. 731, Res Ipsa Loquitur Applicable; and the authorities cited therein. As to "Strict Liability", see Products Liability, Vol. 2, Sec. 16A(4), P3–188, and the authorities cited therein.

The principle of res ipsa loquitur is founded on a conception of probabilities. The facts were placed in evidence that raised the issue of such probability. It was for the jury to decide. The probability of negligence on the part of defendant under the res ipsa principle is greatly strengthened in this case by the testimony of the defendant's witness, who testified as an expert, as to the method of servicing and re-filling the bottles of coke with the fact that rejections of bottles for defects were found by the naked eye of various employees on three separate inspections. This gives ground for the inference that the offending bottle was defective, but was not caught on either of three inspections by the defendant.

All the points of error that have not been discussed herein have been carefully examined, and found to be without any merit. All the points are overruled.

The judgment of the trial court is affirmed.