**PITTSBURG COCA–COLA BOTTLING
WORKS OF PITTSBURG,
Texas, Petitioner,**

**v.**

**Mrs. Cuma PONDER, Respondent.**

No. B–1074.

Supreme Court of Texas.

June 4, 1969.

Jackson, Walker, Winstead, Cantwell & Miller, W. B. Patterson and Jack Pew, Jr., Dallas, for petitioner.

Jones, Jones & Baldwin, Doyle Curry, Marshall, Boyet Stevens, Daingerfield, for respondent.

CALVERT, Chief Justice.

Mrs. Cuma Ponder, respondent, brought suit against petitioner, Pittsburg Coca-Cola Bottling Works of Pittsburg, Texas, for personal injuries sustained as a result of an alleged explosion of a "coke" bottle distributed by petitioner. Based upon answers by the jury to special issues, the trial court entered judgment for Mrs. Ponder in the amount of $11,500. The court of civil appeals affirmed. 430 S.W.2d 104. We reverse the judgments of the courts below and remand the cause to the trial court.

Respondent operated a cafe in Omaha, Texas. She received her supply of Coca Cola directly from petitioner. She kept the wooden cases in a small storeroom along with five other brands of soft drinks. She testified that on September 27, 1965, she was carrying three "king size cokes" from the storeroom to the cooler behind the counter and, as she prepared to put them in the cooler, one of them exploded, injuring her left knee, leg, and ankle.

Respondent pleaded two distinct grounds of recovery, negligence under the doctrine of res ipsa loquitur, and strict liability. In response to special issues, the jury found that (1) the bottle in question was not reasonably fit for the purposes for which it was intended to be used; (2) this unfitness was a proximate cause of respondent's injuries; (3) the explosion of the bottle resulted from petitioner's negligence; and (4) this negligence was a proximate cause of respondent's injuries. Petitioner's first two points of error assert that there is in the record no evidence of probative value to support a recovery by respondent on either of her two theories. More specifically, petitioner argues that there is no evidence that the explosion was caused by a defect which existed in the bottle when it left the care, custody and control of petitioner. Evaluation of these points requires an understanding of applicable law and an analysis of the evidence.

Res ipsa loquitur is a rule of evidence which permits a jury to infer negligence, without proof of specific negligent conduct on the part of the defendant, if the accident is of a type which does not ordinarily occur in the absence of negligence and if the instrumentality inflicting the harm is within the exclusive control of the defendant. Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659 (1935); Washington v. M. K. & T. Ry. Co., 90 Tex. 314, 38 S.W. 764 (1897). This court has extended the res ipsa loquitur doctrine to exploding bottle cases, even in situations where the bottle has passed from the exclusive control of the bottler at the time of injury, provided the plaintiff proves "that the bottle (1) was in no way 'accessible to extraneous harmful forces'; and (2) 'was carefully handled by plaintiff or any third person who may have moved or touched it.'" Hankins v. Coca Cola Bottling Co., 151 Tex. 303, 249 S.W.2d 1008 (1952); Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968, 160 A.L.R. 1445 (1944). In *Honea*, in dealing with the quantum of proof required to discharge the plaintiff's burden in such cases, we quoted from Escola v. Coca Cola Bottling Co., 24 Cal.2d 453, 150 P.2d 436, as follows:

"It is not necessary, of course, that plaintiff eliminate every remote possibility of injury to the bottle after defendant lost control, and the requirement is satisfied if there is evidence permitting a reasonable inference that it was not accessible to extraneous harmful forces and that it was carefully handled by plaintiff or any third person who may have moved or touched it. * * * If such evidence is presented, the question becomes one for the trier of fact * * *, and, accordingly, the issue should be

submitted to the jury under proper instructions." See 183 S.W.2d 970.

See also Benkendorfer v. Garrett, 143 S. W.2d 1020, at 1023–1024 (Tex.Civ.App.—San Antonio, 1940, writ dism'd).

This court has not heretofore applied the rule of strict liability in exploding bottle cases. Indeed, our approach to use of the rule for imposing liability on sellers of products has been gradualistic and marked with caution. Some twenty-seven years ago, we adopted the rule as a means of fixing liability on manufacturers and packagers of food products for human consumption, Decker & Sons v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479 (1942), and on retail purveyors thereof, Griggs Canning Co. v. Josey, 139 Tex. 623, 164 S.W.2d 835, 142 A.L.R. 1424 (1942); but a decade later, we questioned the wisdom of applying the rule to retailers of food products, canned or packaged by others, and we refused to apply it to wholesalers of such products. Bowman Biscuit Co. of Texas v. Hines, 151 Tex. 370, 251 S.W. 2d 153 (1952). Then, in 1956, with the question squarely presented, we refused to grant a writ in Brown v. Howard, 285 S. W.2d 752 (Tex.Civ.App.—San Antonio, 1956, writ ref'd n. r. e.), and thus refused to apply the rule to a manufacturer of a spray causing harm when used on the plaintiff's cattle.

■ In 1967, we finally yielded to the irrefutable logic that the rule of strict liability is the only practical vehicle for protecting the public against harm so often encountered by innocent users and consumers of defective products. We abruptly changed direction. In McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.Sup. 1967), we applied the rule against a distributor of a permanent wave lotion which proved harmful when applied to a woman's hair and scalp. In that case, we committed the court to the rule of strict liability expressed in Section 402A of The American Law Institute's Restatement of the Law of Torts (2d Ed.) as applicable to all persons engaged in the business of selling who sell a product in a defective condition which renders it unreasonably dangerous to a user or consumer or to his property. The necessary effect of *McKisson* was to disapprove prior contrary expressions of the law as announced in Bowman Biscuit Co. v. Hines, supra, and Brown v. Howard, supra. Thereafter, we expressly disapproved Brown v. Howard, and approved a holding of a court of civil appeals that a seller of a defective product is "subject to strict liability for damage caused to the property of the ultimate consumer." Franklin Serum Co. v. C. A. Hoover & Son, 418 S.W.2d 482 (Tex.Sup.1967). More recently, we have extended the rule to sellers of defective products which cause harm to non-users and non-consumers. Darryl v. Ford Motor Co., 440 S.W.2d 630 (Tex.1969). We perceive no sound reason why the rule should not be applied to bottlers.

■ The prime requirement for imposing liability on a seller under the rule of strict liability is proof by the plaintiff that he was injured because of a defective condition in the product when it left the hands of the particular seller. Jack Roach-Bissonet, Inc. v. Puskar, 417 S.W.2d 262, at 278 (Tex.Sup.1967). This is not to say that proof of the defect must be made by direct or opinion evidence; it usually can only be made by circumstantial evidence. As an example, see Darryl v. Ford Motor Co., supra.

While the theories of liability predicated upon res ipsa loquitur and strict liability are different, the problems of making proof confronting plaintiffs who seek to impose liability under the differing theories are quite similar. In an article in 23 Sw.L.J. 1, Dean Page Keeton University of Texas School of Law, states:

"When seeking a recovery on a theory that a product was defective when sold by the defendant, plaintiff has substantially the same proof problems for recovering on a theory of strict liability as he does on a theory of negligence. Un-

der both theories plaintiff must establish to the satisfaction of a jury a defect at the time of sale. Once the proof is sufficient to get to the jury on the existence of a defect, there is generally a basis for an inference of negligence."

Dean Keeton, in writing on exploding bottle cases, recognizes that two factors of importance in determining whether a plaintiff in a particular case has established a prima facie case are "the length of time between surrender of possession by defendant and the breakage" and "the number of persons who could have had access to the bottle during that time." Keeton, Products Liability—Problems Pertaining to Proof of Negligence, 19 Sw.L.J. 26.39. The evidence on these two factors was obviously controlling in Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968 (1944), in which we held that the plaintiff's evidence made a prima facie case, and in Hankins v. Coca Cola Bottling Co., 151 Tex. 303, 249 S.W.2d 1008 (1952), in which we held that the plaintiff's evidence did not make a prima facie case. In the first case, there was evidence that the bottle which exploded had been out of the hands of the bottler for only some five or ten minutes, that it had undergone no change during the interval, and that the plaintiff was exercising some care in handling it. In the latter case, the bottle which exploded had been out of the hands of the bottler for at least twenty-four hours during which time it had been in a retail store where it was subject to almost constant handling by customers before being sold to the injured plaintiff. We held that the plaintiff's evidence "did not satisfy the controlling requirement that he negative the possibility of an intermediate actor on the agency causing the injury, by a preponderance of the evidence, so as to allow the jury to decide whether negligence on the part of the Coca Cola Company might be inferred."

We turn now to an examination of the evidence in this case. There can be no question but that there is in the record evidence of probative force that the bottle exploded and that respondent was injured by the flying glass. In addition to her own testimony to that effect, a regular customer, who was in the cafe at the time, testified that he heard what sounded like a shotgun, and that a piece of glass was propelled into his boot. The same evidence will support a reasonable inference that the bottle was defective when respondent removed it from the case in the storeroom to carry it to the cooler. The question remaining is whether the evidence will support a reasonable inference that the bottle did not sustain damage while in the storeroom, and thus that it must have contained the defect causing the explosion when it was placed in the storeroom by petitioner's deliveryman. Respondent relies entirely upon her own testimony to raise this inference.

It is undisputed that the bottle had been in the storeroom for at least four days before the day of its explosion. However, according to the testimony of respondent, the only persons, other than herself, who ever entered the storeroom were five other deliverymen of bottled drinks and her two employees. She testified further that all of the six deliverymen had separate areas in the storeroom in which to stack their cases of bottled drinks, and none ever placed his cases on the wrong stack; that if any cases were ever found in the wrong stack, it was because she put them there, and, in so doing, she handled them with care; that she alone transferred bottled drinks from the storeroom to the cooler, which she did with care, and her employees did not go into the storeroom except to take the empties and that they had no occasion to touch the full cases.

We hold that the respondent's testimony will support a reasonable inference that the exploded Coca Cola bottle was not mishandled or damaged after it had been delivered to her by petitioner, and thus that the bottle was defective when delivered. To hold otherwise would be to in-

vade the province of the jury and determine the credibility of respondent as a witness. We see no need to analyze the many in-state and out-of-state cases cited in the briefs of the parties. All involve facts which differ in some degree from the facts in this case.

Petitioner's second contention, presented in a series of points of error, is that the special issues and instructions submitting strict liability and res ipsa loquitur to the jury were erroneous and the errors in them were so prejudicial to the defendant that they caused the rendition of an improper judgment. We sustain this contention. The two issues and instructions which submitted strict liability are as follows:

"Special Issue No. 1:

"Do you find from a preponderance of the evidence that the Coca Cola bottle and its contents in question was not reasonably fit for the purposes for which it was intended to be used?

ANSWER 'It was not reasonably fit' or 'It was reasonably fit.'

"If you have answered the foregoing Special Issue No. 1 'It was not reasonably fit' and only in that event, then answer the following Special Issue, otherwise, do not answer same.

"Special Issue No. 2:

"Do you find from a preponderance of the evidence that such unfitness, if any, you have found in answer to the preceding Special Issue, was a proximate cause of the Plaintiff's injuries, if any, in question?

"ANSWER 'Yes' or 'No.'

"You are instructed in connection with the foregoing Special Issues that an implied warranty, not based on an express warranty or the doctrine of negligence, is imposed upon a bottler if its product is for human consumption or calculated to be used in close proximity to the human body and that by bottling, assembling and marketing such product, the bottler impliedly warrants that the product is reasonably fit for the use that such product is intended to be put.

"You are further instructed that one who puts out as his own product and assembles components thereof that may be manufactured by others may yet be liable for defects in said product just as though the bottler and assembler were the manufacturer of all the components."

■ Petitioner objected to Special Issue No. 1 because it was "not confined to the time the bottle left the care, custody, and control of the Defendant, and the answer by the jury will [would] not be any indication to the Court as to whether the jury found it to be unfit at the time it left the Defendant's care, custody, and control, or whether it was unfit at the time the bottle broke." The issue, as worded, was clearly subject to the objection made, and the jury's answer, "It was not reasonably fit", will not support a judgment based on strict liability because respondent has not secured a jury finding that the bottle was not reasonably fit at the crucial time of delivery to respondent. Inasmuch as the cause is to be remanded for re-trial, we add at this point that the "instruction" given by the trial court in connection with Special Issues Nos. 1 and 2 constitutes a general charge on the law which is not only completely unnecessary to an understanding of the issues but is also repugnant to our special issue practice. Rule 277, Texas Rules of Civil Procedure, authorizes a special instruction only when it is necessary "to enable the jury to properly pass upon and render a verdict on such issues." Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481 (1943). There was no such necessity here. See also Lindley v. Lindley, 384 S.W.2d 676 (Tex.Sup.1964).

Since the jury's answers to the strict liability issues will not support the judgment in favor of respondent, it is necessary to

examine the issues submitting res ipsa loquitur to determine if they will support the judgment. The issues and an accompanying instruction are as follows:

"Special Issue No. 3:

"Do you find from a preponderance of the evidence that the explosion in question, if any, of the Coca Cola bottle and its contents resulted from the negligence, if any, of the Defendant?

"ANSWER 'Yes' or 'No.'

"If you have answered the foregoing Special Issue No. 3 'Yes', and only in that event, then answer the following Special Issue, otherwise, do not answer same.

"Special Issue No. 4:

"Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the occurrence in question?

"ANSWER 'Yes' or 'No.'

"In connection with the foregoing Special Issues No. 3 and 4, you are instructed that if the explosion, if any, was part of an occurrence as would not ordinarily happen without fault on the part of the Defendant prior to and at the time of the delivery of the Coca Cola bottle and its contents in question to the Plaintiff, and that the Coca Cola bottle and its contents was handled with due care after such delivery, and that the Coca Cola bottle and its contents was not altered or changed in any way after such delivery and up to the time of any explosion, then you may find that the explosion, if any, was caused by negligence, if any, of the Defendant under the doctrine of 'res ipsa loquitur' or 'the event or thing speaks for itself.' Further, this doctrine of 'res ipsa loquitur' rests upon the proposition that such an explosion, if any, must be such as in the ordinary course of events and things does not

happen without negligence, if any, on the part of the one having the exclusive management or control of the bottling and delivery process."

■ Among numerous objections lodged by petitioner to issues 3 and 4 and the accompanying instruction was one that special issue 3 was duplicitous in that it contained two or more controverted issues of fact. The objection should have been sustained. To give an affirmative answer to the issue, the jury had to find that there was an explosion of the Coca Cola bottle and that the explosion was caused by petitioner's negligence. Moreover, the instruction given in connection with issues 3 and 4 is an even more flagrant violation of the rule against the giving of a general charge than is the instruction given in connection with issues 1 and 2. In the instruction, the court plainly advised the jury that, if certain facts were found to exist, the jury should answer issue No. 3 that the explosion of the bottle was caused by petitioner's negligence. The judgment in favor of respondent cannot be permitted to stand on the jury's answers to Special Issues Nos. 3 and 4.

We recognize that the framing of special issues for submitting a case to a jury on res ipsa loquitur pleading and proof may present problems not found in cases based upon specific negligent acts, Morris, Res Ipsa Loquitur in Texas, 26 Texas L.Rev. 257, 761 (1948); 36 Texas L.Rev. 696 (1958); but this fact does not authorize a general charge form of submission over the objection of one of the parties. In view of our holding that the rule of strict liability is applicable to bottler defendants in this type of case, there would seem to be little, if any, advantage to plaintiffs injured by exploding bottles to continue to plead and submit their cases on res ipsa loquitur.

The judgments of the court of civil appeals and trial court are reversed and the cause is remanded to the trial court.